Pamella A. HENRY, Plaintiff,

v.

The GEHL CORPORATION, and
Mike Duryea, Defendants.

No. 93–4168–SAC.

United States District Court,
D. Kansas.

Oct. 19, 1994.

K. Gary Sebelius, Catherine A. Walter, Wright, Henson, Somers, Sebelius, Clark & Baker, Topeka, KS, for plaintiff.

Carol B. Bonebrake, Cosgrove, Webb & Oman, Topeka, KS, Daphne E. Jones, Tripp, Scott, Conklin & Smith, Fort Lauderdale, FL, Cleo G. Murphy, Murphy & Freund, Topeka, KS, for defendants.

### MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the motions for summary judgment (Dks. 84, 89) filed by the defendant The Gehl Corporation ("Gehl") and the defendant Mike Duryea. The plaintiff brings this employment discrimination action under Title VII, 42 U.S.C. § 2000e, as amended by 42 U.S.C. § 1981a. Her claims are (1) disparate treatment in terms and conditions of employment, (2) hostile work environment, and (3) discriminatory termination on the basis of sex and in retaliation for protesting sexual harassment at work. Both defendants seek summary judgment on all claims arguing the plaintiff is unable to present a prima facie case of disparate treatment, hostile work environment, and retaliatory termination. The defendant Gehl also denies liability for Duryea's actions under the plaintiff's hostile work environment claim. The court denies the defendants' motions on the following analysis.

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The court views the evidence and draws any possible inferences in the light most favorable to the non-moving party. *MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1117 (10th Cir.1991). A summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

The plaintiff, Pamella Henry, had worked as a telemarketer and had heard from Scott Clark, a telemarketer with Gehl, that the Gehl office in Topeka was a "good phone room." Based on that information, Pamella applied for a job with Gehl. The defendant, Michael Duryea, was the Topeka office manager for Gehl. He hired the plaintiff on December 12, 1991, and terminated her approximately six weeks later. The plaintiff filed a charge with the Kansas Human Rights Commission in February of 1992 alleging discrimination on the basis of sex and retaliation.

### Disparate Treatment in the Terms and Conditions

During the hiring interview, Duryea told the plaintiff it was his general rule not to hire women but that Scott Clark had highly recommended her. On other occasions, Duryea had explained that women generally didn't "work out" as they lacked a "strong voice" and could not bring in "the kind of money" needed. The plaintiff alleges that throughout her six weeks of employment Duryea did not treat her the same as the male telemarketers on the critical issues of attendance and production. In the pretrial order, the plaintiff specifically alleges that Duryea unfairly reprimanded her on January 21, 1992, and told her the reprimand was because "women don't work out."

■ It is an unlawful employment practice for an employer to discriminate against an employee with respect to terms and conditions of employment because of the employee's sex. 42 U.S.C. § 2000e–2(a). When the claim is disparate treatment on the basis of sex, the plaintiff must prove the defendant acted with a discriminatory motive or intent. *Sorensen v. City of Aurora*, 984 F.2d 349, 351 (10th Cir.1993). Absent the unusual instance where there is direct evidence of the employer's discriminatory intent, the Title VII plaintiff may turn to the burden of proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the *McDonnell Douglas* three-step scheme, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of sexual discrimination. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 415 (1993). If proved, a prima facie case gives rise to a presumption of discrimination and shifts the burden of production to the defendant to rebut the presumption. *St. Mary's*, —— U.S. at ——, 113 S.Ct. at 2747, 125 L.Ed.2d at 416. In short, it becomes the defendant's burden to produce evidence that the challenged actions were taken for a legitimate, nondiscriminatory reason. *Id.* To carry this burden, the defendant " 'must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* (quoting *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094).

■ If the defendant carries the burden of production, then the presumption drops from the case. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2747, 125 L.Ed.2d at 416. The plaintiff retains the ultimate burden of persuading the factfinder of intentional discrimination. *Id.* To prevail, the plaintiff must directly prove the employer acted on a discriminatory motive or indirectly prove the employer's reasons were a pretext for discrimination, that is, the stated reasons were false and discrimination was the real reason. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d at 1417; *see St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2752, 125 L.Ed.2d at 422. "Although a prima facie case combined with disproof of the employer's explanation does not prove intentional discrimination as a matter of law, it may permit the factfinder to infer intentional discrimination, and thus preclude summary judgment for the employer." *Durham v. Xerox Corp.,* 18 F.3d 836, 840 (10th Cir. 1994) (citations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994).

■ To establish a prima facie case of employment discrimination in the terms, conditions or privileges of employment, the

plaintiff must show that similarly situated male employees were treated differently. *Torre v. Federated Mut. Ins. Co.*, 854 F.Supp. 790, 804 (D.Kan.1994); *see Sorensen v. City of Aurora*, 984 F.2d at 352–53. The defendants argue the plaintiff is unable to show she was subjected to standards or treatment any different from those imposed on male co-workers. According to the defendants, the plaintiff was paid the same hourly wage, was required to meet the same production quota, and was subjected to the same disciplinary measures and motivational techniques used on all the Topeka sales staff. As for the unfair reprimand on January 21, 1992, the plaintiff testified that Duryea yelled at everybody for low production and put everyone on part-time employment, but that she was the only employee to whom Duryea specifically discussed other reasons for the part-time employment. In her deposition, the plaintiff admits that she, not Duryea, initiated the conversation between them about the part-time employment reprimand. The defendants contend the plaintiff complains not about receiving unequal treatment but about not receiving preferential treatment.

In response, the plaintiff points to the fact that most of the sales staff was put on part-time but that her personnel file is the only one having a formal written reprimand regarding this event. Melanie Bearden, Duryea's secretary, testified that Duryea prepared this reprimand after he terminated the plaintiff. The plaintiff complains that Duryea abruptly terminated her while on part-time status without giving her at least a week to meet the goal. There was a male employee with production totals lower than the plaintiff who was not terminated or even counseled. The plaintiff further notes that her file shows she was counseled for absences when her attendance was better than other male employees.

■ In reply, the defendant Gehl argues that the male employees to whom the plaintiff compares herself were either working under different circumstances or receiving similar disciplinary treatment. Though Gehl's arguments seem facially meritorious in many respects, the court will not consider

them. The defendant Gehl filed a forty-page reply brief. The court's scheduling order (Dk. 11) and pretrial order (Dk. 90) provide that "[r]eply memoranda shall not exceed 20 pages." Gehl did not file a motion for leave to submit a memorandum in excess of the court's page limitation. Gehl's apparent disregard for the page limitations requires an appropriate sanction. The court shall not consider any part of Gehl's reply brief or the materials attached thereto.

■ It is essential to any disparate treatment claim that the plaintiff prove the comparables are similarly situated. *Torre v. Federated Mut. Ins. Co.*, 854 F.Supp. at 804. The plaintiff's proof must address all relevant aspects of similarity:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated *in all respects.* Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992) (citations omitted) (quoted in *Magruder v. Runyon*, 844 F.Supp. 696, 702 (D.Kan.1994)).

■ The plaintiff's arguments and proof seem to gloss over what may be circumstances that differentiate some of the male employees from her. Even so, the production and attendance records show there were similarly situated male employees who were not as severely reprimanded and were given more chances at improving. In addition, Duryea's attitude about women having a difficult time being telemarketers raises the inference that he looked for the plaintiff to fail and, therefore, was quick to reprimand her on any perceived problem with production or attendance. Viewed in the light most favorable to the plaintiff, the evidence creates genuine issues of material fact.

### Hostile Work Environment

In the pretrial order, the plaintiff alleges she was continually subjected to unwelcomed and offensive remarks, jokes and attention from Duryea. Duryea's comments were directed at her body and the way she dressed. He told demeaning sexual jokes. He belittled her as being hired only for her looks. He stared at her and stood in doorways requiring her to brush against him. The plaintiff alleges these offensive actions and words occurred with such regularity that they interfered with her work performance and created a hostile work environment.

■■■ "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2404–05, 2406, 91 L.Ed.2d 49 (1986)). The Supreme Court said this standard is the middle ground between one that makes merely offensive conduct actionable and a standard that requires a psychological injury.[1] *Id.* —— U.S. at ——, 114 S.Ct. at 370, 126 L.Ed.2d at 301. A "mere utterance of an ... epithet which engenders offensive feelings in a employee," *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405, does not impact a condition of employment and, therefore, does not implicate Title VII. *Harris,* —— U.S. at ——, 114 S.Ct. at 370–71, 126 L.Ed.2d at 302. On the other hand, Title VII becomes an issue before the employee suffers a nervous breakdown. *Id.*

■■■ To recover on this claim, the plaintiff must prove the work environment would reasonably be perceived, and was perceived by her, as hostile or abusive. *Id.* The Supreme Court put it this way:

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment and there is no Title VII violation.

—— U.S. at ——, 114 S.Ct. at 370, 126 L.Ed.2d at 302. In short, a hostile work environment claim includes elements of both subjective and objective harm to the employee. *Spain v. Gallegos,* 26 F.3d 439, 447 (3rd Cir.1994).

■■■ When is a work environment "hostile" or "abusive" is a case-by-case determination guided by no sharply defined rules. *Harris,* —— U.S. at ——, 114 S.Ct. at 370–71, 126 L.Ed.2d at 302. Circumstances to consider in each case include:

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

at ——, 114 S.Ct. at 369, 126 L.Ed.2d at 302–03. An environment that is discriminatorily abusive "often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris,* at ——, 114 S.Ct. at 371, 126 L.Ed.2d at 302. These tangible effects are not a precondition to Title VII liability; it is enough to prove the harassing conduct was so severe or pervasive as to create an abusive work environment.[2]

---

1. The defendant Duryea in his original and reply briefs argues the plaintiff did not come forth with sufficient facts to show "that the work environment was sufficiently severe and persistent to affect the psychological well-being of employees." (Dk. 89 at 2 and Dk. 92 at 3) (Citing *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982)). The Supreme Court in *Harris* plainly rejected the standard found in *Henson* that an employee must show psychological harm to recover on a hostile environment claim.

2. Justice Ginsburg elaborated on this point in her concurrence. A trier of fact should focus on whether the harassment interfered with work performance. Nonetheless, the employee is not

Applying the above to the present case, the court finds that the plaintiff has come forth with sufficient evidence of a sexually abusive or hostile work environment to defeat the defendants' motions for summary judgment. The plaintiff's evidence shows that Duryea daily engaged in sexual banter, made sexual innuendos about her, told crude sexual jokes, embarrassed her with comments about her body and clothes, and stood so the plaintiff was forced to brush against him. The record supports some of the following specific instances. At the office Christmas party, Duryea told the group that he had been waiting for the plaintiff's loose fitting sweater to fall the rest of the way down from her shoulder and that he hired her only for her looks. When the plaintiff had chicken pox, Duryea asked the plaintiff every day where she had broken out and volunteered to check for spots where she could not see. He daily made a point of smelling the plaintiff's perfume and trying to guess what she was wearing. Duryea often times would make a sexual joke about the name of the perfume. He told the plaintiff not to wear things that covered her up. In front of the sales group, Duryea announced that his supervisor was scheduled to visit and then asked the plaintiff to wear a dress that would take his boss's mind off of business. Duryea referred to one of the plaintiff's dresses as her "do me" dress. One day when sales were slow, Duryea came in and instructed the plaintiff to stand up front and let the male telemarketers look at her awhile and "maybe that will get them excited" and sales would improve. On another occasion, Duryea told the men to keep up the sales so they could watch the plaintiff walk while she retrieved the verification slips and recorded them. Duryea's managerial style was intimidating and aggressive with him often screaming and yelling at the sales staff to improve. Duryea sometimes worked while under the influence of alcohol, and employees noticed that Duryea was particularly difficult at those times.

One night after work, some of the office went to a bar for drinks. At the bar, Duryea twice put his hand on the plaintiff's thigh. She immediately removed his hand both times and moved away from him. Afraid that she was still angry enough to say something to Duryea that could lead to her firing, the plaintiff called in sick the next day.

The plaintiff says that Duryea's comments and conduct made her uncomfortable, often embarrassed her, and interfered with her work. She tried to avoid and ignore Duryea and even to discourage his attention. This put the plaintiff in the most difficult position of slighting the very person with the authority to fire her at will. The plaintiff eventually complained to Duryea about his harassment and was fired immediately. The evidence shows the plaintiff perceived the work environment as abusive.

The defendant argues the court should disregard those incidents of harassment which the plaintiff failed to allege specifically in her administrative charge. This entails a credibility determination inappropriate in summary judgment proceedings. The circumstances here match those present in cases finding actionable harassment: physical touching, continuous and patently offensive sexual comments and propositions directed at the plaintiff, harassment furthered by the implicit use of supervisory power over the victim, and hostile and demeaning behavior. *See Schindler v. Larry's IGA, Inc.,* No. 92–1033–PFK, 1994 WL 324563 at *8, 1994 U.S.Dist. LEXIS 9100 at *24 (D.Kan. June 16, 1994); *see, e.g., Martin v. Nannie and the Newborns, Inc.,* 3 F.3d at 1412–13, 1418–19. Whether's Duryea's harassment " 'was sufficiently severe and pervasive is quintessentially a question of fact.' " *Beardsley v. Webb,* 30 F.3d 524, 530 (4th Cir.1994) (quoting *Paroline v. Unisys Corp.,* 879 F.2d 100, 105 (4th Cir.1989), *vacated in part on other grounds,* 900 F.2d 27 (4th Cir.1990 (en banc))). Indeed, this case is more than relatively isolated instances of innocuous sexual

required to prove that the harassment caused lower productivity only that it made the job more difficult to perform. —— U.S. at ——, 114 S.Ct. at 372, 126 L.Ed.2d at 304 (Ginsburg, J., concurring) (citing *Davis v. Monsanto Chemical Co.,* 858

F.2d 345, 349 (6th Cir.1988), *cert. denied,* 490 U.S. 1110, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989)); *see Dey v. Colt Const. & Development Co.,* 28 F.3d 1446, 1455 (7th Cir.1994).

teasing and more than an offensive utterance. The plaintiff has come forth with suffi-, cient evidence and deserves the opportunity to prove that Duryea's harassment altered the terms and conditions of her employment. The court denies summary judgment on this claim.

### Retaliatory Discharge

■ The plaintiff claims she was discharged in retaliation for complaining about Duryea's sexual harassment. In support of her claim, the plaintiff submits evidence showing the following facts. The plaintiff and several co-workers, including the defendant Duryea, went out for drinks after work on Friday, January 24, 1992. Twice that evening, Duryea put his hand on the plaintiff's thigh. The plaintiff considered his advances unwelcomed, removed his hand, and moved from where she was sitting. The plaintiff called in sick the next day afraid of what she might say to Duryea about the prior evening. On Monday, the plaintiff worked two hours when Duryea called her into his office. According to the plaintiff, Duryea told her in the privacy of his office that her dress was lovely, that it complemented her legs, and that he really liked a dress which she had worn the previous week. At that point, the plaintiff said she did not appreciate his comments on her body or how her clothes looked on her, his dirty jokes, or his touching of her last Friday night. The plaintiff added that she believed his conduct constituted sexual harassment and asked Duryea to stop. Duryea responded that he did not need this and fired her.

■ Title VII prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, the plaintiff must prove: "(1) she engaged in a protected opposition to discrimination or participation in a proceeding arising out of the discrimination, (2) adverse action by the employer subsequent to the protected activity, and (3) a causal connection between the employee's activity and the adverse action." *Griffith v. State of Colo., Div. of Youth Ser-*

*vices,* 17 F.3d 1323, 1331 (10th Cir.1994) (citation omitted). The plaintiff need prove only a reasonable good faith belief that there was discrimination. *Mitchell v. Visser* 529 F.Supp. 1034, 1044 (D.Kan.1981). An informal complaint to management qualifies as protected activity. *Phelps v. Sears Roebuck and Co.,* No. 90–4133, 1993 WL 523202 at *5, 1993 U.S.App. LEXIS 33587 at *14 (10th Cir. Dec. 15, 1993); *see Sumner v. United States Postal Service,* 899 F.2d 203, 209 (2nd Cir. 1990).

Gehl and Duryea assert the plaintiff was terminated for poor attendance and production and not in retaliation. The defendants argue that the records showing the plaintiff's poor performance and the reasons for her discharge stand uncontroverted. The defendants are wrong. The plaintiff offers evidence that only after Duryea fired the plaintiff did he prepare and insert into the plaintiff's personnel file most of the negative comments about her performance and attendance. Duryea's secretary testified that Duryea even forged the plaintiff's signature on an employee reprimand prepared after the plaintiff's termination. To say the least, this is suspicious conduct. During the plaintiff's brief employment with Gehl, most of the staff failed to meet the daily sales goal. Duryea testified that December and January are two of the most difficult months for sales. Besides this, the plaintiff's account of what happened when she was fired is enough evidence on which a reasonable trier of fact could find that Duryea acted on a retaliatory motive. This claim withstands the defendants' summary judgment challenge.

### Gehl's Liability on Hostile Work Environment Claim

■ Finally, Gehl argues it is not liable for Duryea's harassment under established agency law principles. According to Gehl, Duryea's alleged conduct was unauthorized and unreported. Gehl denies receiving any complaints from the plaintiff or any other employees concerning sexual harassment by Duryea. Gehl refers to its "Non–Harassment Policy" and "Problem–Solving Procedure" found in its employee handbook. The plaintiff maintains Gehl is liable, because Du-

ryea was her supervisor with the ultimate authority to hire and fire her.

Title VII prohibits only "an employer" from engaging in unlawful employment practices. 42 U.S.C. § 2000e–2(a). "Employer" is defined to include an "agent" of any person who has fifteen or more employees and conducts a business that affects commerce. 42 U.S.C. § 2000e(b). The Supreme Court has read that definition as evincing congressional "intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. at 72, 106 S.Ct. at 2408. While passing on the opportunity to establish definitive limits, the Court referred to agency principles for guidance in determining employer liability. *Id.* The Court did offer at least two boundaries by rejecting the proposition "that employers are always automatically liable for sexual harassment by their supervisors" and by recognizing that "absence of notice to employer does not necessarily insulate that employer from liability." *Id.*

The Tenth Circuit has followed the Supreme Court's advice and relied on agency principles, Restatement (Second) of Agency § 219, as providing three alternative bases for holding an employer liable for an agent's hostile work environment sexual harassment: (1) § 219(1)—employer liable for tort committed by employee acting within scope of employment; (2) § 219(2)(b)—employer liable for negligence or recklessness in failing to remedy or prevent a hostile work environment; and (3) § 219(2)(d)—employer liable when employee relied upon apparent authority or was aided in accomplishing the harassment by the agency relationship. *Griffith v. State of Colo., Div. of Youth Services,* 17 F.3d at 1330; *Hirschfeld v. New Mexico Corrections Dept.,* 916 F.2d 572, 576–79 (10th Cir.

1990); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1417–18 (10th Cir.1987).

The plaintiff does not separately address these agency principles preferring instead to rely exclusively on the holding in *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993). The plaintiff there had worked as a secretary to the county attorney and sued the county attorney and the county for sexual harassment. The Tenth Circuit held:

We agree with the Fourth Circuit that "[a]n individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment." *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989), *aff'd in pertinent part,* 900 F.2d 27 (4th Cir.1990) (en banc). In such a situation, the individual operates as the alter ego of the employer is liable for the unlawful employment practices of the individual without regard to whether the employer knew of the individual's conduct. *See* 29 C.F.R. 1604.11(c). (footnote omitted).

In this case, defendant Cannon is a paradigm example of a supervisor with significant control over plaintiff's hiring, firing, or conditions of employment. The parties agree that, as county attorney, Cannon had the ultimate authority over her employment and working conditions. Consequently, plaintiff's claim of a hostile work environment caused by Cannon's conduct is a claim against Salt Lake County itself, and no knowledge or recklessness on the part of the County must be demonstrated.

1 F.3d at 1125. The court agrees with the plaintiff that *Sauers* [3] is on all fours. Duryea had the ultimate authority to hire and fire the plaintiff. He exercised significant control over the plaintiff's conditions of employment. There is a factual and legal basis for imposing liability on Gehl for Duryea's harassment.

---

**3.** *Sauers* is one in a line of cases recognizing an employer's direct liability for harassment by a supervisor with direct and significant control over the victim. *See, e.g., Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1559–60 (11th Cir.1987); *Campbell v. Kansas State University,* 780 F.Supp. 755, 764 (D.Kan.1991). Such a rule is consistent with the EEOC's guidelines, 29 C.F.R. § 1604.11(c) making a supervisory employee an agent. This rule is really nothing more than a liberal reading of the apparent authority agency principles. *Hastings v. Hancock,* 842 F.Supp. 1315, 1320 (D.Kan.1993); *see, e.g., Karibian v. Columbia University,* 14 F.3d 773, 780 (2nd Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994), and *Dutt v. Delaware State College,* 854 F.Supp. 276, 280–81 (D.Del.1994); *cf. Bouton v. BMW of North America, Inc.,* 29 F.3d 103, 108–10 (3rd Cir.1994).

Alternatively, the court believes there are genuine issues of material fact regarding the third basis of liability stated in *Hirschfeld.* Section 219(2)(d) of the Restatement (Second) of Agency recognizes a master is liable for a servant acting outside the scope of delegated authority if "the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relationship." The Tenth Circuit in *Hirschfeld* quoted with approval from the district court's opinion: " 'Section 219(2)(d) properly imputes an employee's actions to the employer whose delegation of authority empowered the agent to undertake them.' " 916 F.2d at 579. That the agency relationship or the employment provided proximity to the plaintiff is not enough. *Id.* Unlike *Hirschfeld,* the supervisor here relied on his supervisory position for much more than providing him access to the plaintiff. Duryea had the express authority to determine the plaintiff's duties, to comment on the plaintiff's attire, to inquire into her health, and to hire and fire her. In the apparent exercise of that authority, Duryea directed the plaintiff to stand up and motivate her male co-workers, Duryea explicitly commented on how plaintiff's dress complimented certain parts of her body, and Duryea asked about where the plaintiff had spots from the chicken pox. In essence, Duryea capitalized on his authority over the plaintiff to create an intimidating and sexually-charged atmosphere in which the plaintiff realized the almost certain termination facing her if she challenged his offensive conduct.[4] Based on the foregoing facts and analysis, the court believes there are genuine issues of material fact as to Gehl's liability for Duryea's conduct.

IT IS THEREFORE ORDERED that the summary judgment motions of the defendant Gehl (Dk. 84) and the defendant Duryea (Dk. 89) are denied.

---

**4.** Gehl's employee handbook required the plaintiff to take her complaints first to her supervisor, Duryea. The handbook provides no alternative method of reporting an employee's complaints when the supervisor is the alleged harasser.