13 F.3d 406
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Arlene P. PHELPS and Ronald L. Carlson, Plaintiffs-Appellants,
v.
SEARS ROEBUCK AND COMPANY, Defendant-Appellee.
 No. 90-4133.
 United States Court of Appeals, Tenth Circuit.
 Dec. 15, 1993.
 ORDER AND JUDGMENT[1]
 
 1
 Before McKAY, Chief Judge, HOLLOWAY, Circuit Judge, and DUMBAULD,[2] District Judge.
 
 
 2
 This is an appeal from a decision of the district court granting defendant Sears Roebuck and Company's ("Sears") motion for summary judgment against plaintiffs' sex discrimination, sexual harassment, retaliation and age discrimination claims. The judge issued his ruling from the bench after a hearing on the motion. An order reflecting that decision was filed later and plaintiffs filed a timely notice of appeal.
 
 
 3
 * Facts and Procedural History
 
 
 4
 Phelps and Carlson filed a complaint alleging sex discrimination, sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e, et seq. ("Title VII"), as well as age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621, et seq. ("ADEA"). The complaint alleged that Phelps had been discriminated against because of her sex and that Carlson had been discriminated against because of his sympathy and support of Phelps; both also claimed age discrimination. Phelps alleged that the sex discrimination against her had begun in 1978. The violations were alleged to have culminated in the terminations of Phelps and Carlson in September 1986.
 
 
 5
 Both plaintiffs were sales employees at Sears' Salt Lake City store, Phelps for ten years and Carlson for eighteen. In 1979, Phelps had filed sex discrimination complaints against Sears with the Utah Anti-Discrimination Division, and the United States Equal Employment Opportunity Commission ("EEOC") in 1980. Both complaints were resolved without litigation. On August 11, 1986, Phelps wrote a letter to Donald Woody, Sears' Group Manager, complaining about continuing sex discrimination and retaliation. Sears sent an investigator to the Salt Lake City store, and he allegedly found evidence of discrimination.
 
 
 6
 On September 20, 1986, the Salt Lake City store implemented a new time card policy. This new policy prohibited employees from changing work schedules without prior permission from management. The policy was announced at any early morning meeting. That day, Carlson said he became ill due to the stress caused by his reassignment (which he viewed as a demotion or punishment), and left approximately twelve minutes early; because he was ill, he asked Phelps to drive him home, and she left early as well. On September 24, 1986, both Phelps and Carlson were terminated, allegedly for violation of the new time card policy.
 
 In his oral ruling the judge stated:
 
 7
 Plaintiffs' ultimate burden in an age discrimination case is to show that age was a determining factor in a decision to terminate the employee.
 
 
 8
 Insubordination is a legitimate nondiscriminatory reason for discharge from employment sufficient to rebut an employee's prima facie claim of discrimination.
 
 
 9
 In order to establish a hostile work environment, a plaintiff must show a clear, factual pattern of discriminatory conduct which is repetitive and debilitating and which affects the plaintiffs' ability to perform their job.
 
 
 10
 It is inadequate to show incidents of mistreatment which are not grounded in age or gender animus.
 
 
 11
 The Court finds from the facts that I deem to be material and not hearsay, mere allegations, or facts not admissible, the Court finds that plaintiffs have failed to show that their age was a determining factor in Sears decision to terminate their employment.
 
 
 12
 The Court further finds from the facts deemed admissible that plaintiffs were terminated for the legitimate nondiscriminatory reason of insubordination and that plaintiffs have failed in their shifted burden to prove that the reason given by Sears for their discharge was mere pretext.
 
 
 13
 The Court also concludes from the undisputed admissible material facts that plaintiffs have failed to show a clear factual pattern of discriminatory conduct which is repetitive and debilitating which affected their ability to perform their job. Accordingly, defendant's motion for summary judgment is granted.
 
 
 14
 Transcript of Summary Judgment Hearing in the District Court, II Supp. R. at 26-28.
 
 
 15
 From careful review of the record, we must agree that the plaintiffs have raised genuine issues of material fact respecting their claims. Accordingly, we reverse the summary judgment and remand.
 
 II
 Standard of Review
 
 16
 We review a district court's grant of summary judgment de novo, using the same standard as that of the district court. Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1414 (10th Cir.1993); Purrington v. University of Utah, 996 F.2d 1025, 1028 (10th Cir.1993); Williams v. Rice, 983 F.2d 177, 179 (10th Cir.1993); Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). It must be determined whether the movant has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 III
 Discussion
 
 17
 The controlling question is whether there is evidence such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. However, the issue of material fact required to be present by Rule 56(c) to entitle the nonmoving party to proceed to trial need not be resolved conclusively in favor of the party asserting its existence; rather such party must show that there is a factual dispute which the trier-of-fact would have to resolve at trial. See id. at 248-49 (citing First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-289 (1968)).
 
 
 18
 Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Therefore, the question we must answer with respect to each of the claims made by Phelps and Carlson is whether, in response to Sears' motion for summary judgment, they have presented evidence sufficient to enable a trier-of-fact to find in their favor under the law applicable to each of the claims. And basic to these principles is the rule that the issue of discriminatory intent presents an ultimate question of fact. Pullman-Standard v. Swint, 456 U.S. 273, 289-90 (1982).
 
 
 19
 * Phelps' Claim of Hostile or Abusive Work Environment
 
 
 20
 Phelps asserts a claim of sexual harassment as an employment discrimination in violation of Title VII. Verified Complaint, I R., Doc 1 at 26; Brief of Appellant at 17. Sexual harassment, like racial harassment, is now universally recognized as employment discrimination within the meaning of Title VII. Hicks v. Gates Rubber Co., 833 F.2d 1406, 1413 (10th Cir.1987). There are two types of sexual harassment claims: quid pro quo sexual harassment and hostile work environment sexual harassment. See Honce v. Vigil, 1 F.3d 1085, 1089 (10th Cir.1993); Hicks, 833 F.2d at 1413. Phelps asserts the latter type of claim.
 
 
 21
 "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' ... that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' ... Title VII is violated." Harris v. Forklift Sys., Inc., 62 U.S.L.W. 4004, 4005 (U.S. Nov. 9, 1993) (citation omitted). On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview." Id.[3]
 
 
 22
 Under the test laid out in Harris, we feel that there was substantial enough evidence presented here to withstand the defendant Sears' motion for summary judgment.
 
 
 23
 In his deposition, Carlson admitted that Phelps was a better salesperson than the men were and she beat the men in sales. He said that jealousy and personal feelings against Phelps developed. Carlson said that when they told us about the discrimination suit of Phelps, everyone took it personally. Bob Belsey told everyone in the department: "Say anything or do anything but don't touch her." Deposition of Ronald L. Carlson, Appendix of Appellee at 434. Carlson said the actions against Phelps were a combination of not liking her, madness at her, that she was a woman and beyond. Id. at 47. Phelps said that Belsey had been division manager. Deposition of Arlene P. Phelps, I Supp. R. at 52. Carlson testified Connell called Phelps names that would have produced a physical confrontation among men. Deposition of Ronald L. Carlson, Appendix of Appellee at 437.
 
 
 24
 As to management's knowledge of these circumstances, Carlson said that when Mr. Morse had been at the store about three weeks, Carlson told him he had worked with Phelps and that there were a lot of things that had happened to Phelps which Morse should know about; that a "threat" had been made to Carlson that he had joined Phelps "side," which he had done. Id. at 51. Morse became the store manager at the Salt Lake City store in 1985, and Farner was manager before Morse. Brief of Appellee at 3. In the Brief of Appellee at 47, Sears denies that a sufficiently polluted work environment was shown. In its argument on this claim, Sears concedes Phelps and Carlson were top performers in the sales force and continued at that level of performance until they were fired for insubordination. Id. at 47. Diane Nixon had witnessed incidents when Phelps and Nixon were told "we were stupid bitches...." These remarks were made after Phelps or Nixon got a sale which the men felt they should have had. Id. at 33-34.
 
 
 25
 In sum, under the Supreme Court's Harris test, we hold the evidence was sufficient to raise a genuine issue of material fact as to Phelps' hostile work environment claim.
 
 B
 
 26
 Phelps' Claim of Sexually Discriminatory Discharge
 
 
 27
 Phelps further argues that the summary judgment should be reversed because she made sufficient showing of a genuine issue of fact of a sexually discriminatory discharge of her on September 24, 1986. The Supreme Court has established a three-part test to determine whether the plaintiff has established a prima facie case under Title VII for a wrongful termination claim. Initially, she must show that (1) she belongs to a protected class; (2) she was qualified and satisfactorily performing her job; and (3) she was terminated under circumstances giving rise to an inference of discrimination. Martin, 3 F.2d at 1416-17. Once the plaintiff meets this burden, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the decision which adversely affected the employee. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).
 
 
 28
 We have already alluded to the evidence that establishes the first two elements of Phelps' prima facie case. She is in the protected class as a female employee, and Carlson's statements, cited above, established that she was one of the top sales performers in the organization. Moreover, the evidence about the sexual harassment imposed on Phelps has been marshalled earlier. These circumstances in our record are sufficient to give rise to an inference of discrimination in her discharge. Martin, 3 F.3d at 1417. We are at this point only determining whether she has made out a sufficient case to withstand the summary judgment motion of Sears, and not whether her proof is enough to convince the trier-of-fact by a preponderance of the evidence on her claim.
 
 
 29
 Sears did, however, offer its showing of an allegedly legitimate, nondiscriminatory reason for its discharge decision. This was based on the admitted departure of Phelps who drove Carlson home before 6:00, some 12 minutes before the end of their work schedule. Nevertheless, there was evidence that Carlson was ill and that he sought to contact three of the managerial personnel to obtain permission to leave at that time and was unable to reach them. There was evidence that there had not been a rigid enforcement earlier of the work schedule rules.[4]
 
 
 30
 Considering the evidence as a whole, and given the hostility of management to Phelps and Carlson which some evidence showed, we feel that pretext was sufficiently suggested in order that a summary judgment against Phelps' discriminatory discharge claim was unjustified.
 
 C
 Carlson's and Phelps' Retaliation Claims
 
 31
 Both Carlson and Phelps allege claims for retaliatory discharge in violation of 42 U.S.C.2000e-3(a). That section protects employees who either oppose discrimination by an employer or make charges of discrimination against an employer.[5] We feel that both Phelps and Carlson have produced enough evidence to withstand motions for summary judgment on these claims.
 
 
 32
 In order to prove a prima facie case of retaliation, a plaintiff must demonstrate that he or she engaged in protected participation or opposition for Title VII purposes, that the employer subsequently took some form of adverse action against him or her, and that the adverse action was causally connected to the protected activity. See Archuleta v. Colorado Dep't of Institutions, 936 F.2d 483, 486 (10th Cir.1991); Allen v. Denver School Bd., 928 F.2d 978, 985 (10th Cir.1991); Anderson v. Phillips Petroleum Co., 861 F.2d 631, 634 (10th Cir.1988). With respect to the protected activity, the plaintiff need not prove that there was actual discrimination, but only that he or she had a reasonable, good faith belief that there was discrimination. And the plaintiff need not make a "formal" complaint, as informal complaints to management and other sorts of notification will suffice. See Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir.1990).
 
 
 33
 Proof of retaliatory motive need not be through direct evidence of retaliatory animus, but may also be established through evidence that other employees in similar circumstances were treated differently. See id. From this point on, the analysis follows that in Burdine, supra, in that the defendant is permitted to articulate a nondiscriminatory reason for the discharge, and the plaintiff is afforded an opportunity to show that the proffered reason is pretextual. See id.
 
 
 34
 We believe that both Phelps and Carlson have presented enough evidence to raise a genuine issue of material fact requiring trial on this claim. The plaintiffs contend that the new time card policy was implemented shortly after Phelps' 1986 complaint was investigated and a report was prepared showing evidence of discrimination and other illicit activities at the Salt Lake City store. See Deposition of Steven K. Sanders, IV Supp. R. at Exhibit 4 (internal correspondence from Steven K. Sanders to Dennis Morse of September 8, 1986).
 
 
 35
 Phelps and Carlson have presented evidence suggesting that the store's management had planned to get rid of the plaintiffs. The day that the new time card policy was implemented, Carlson was transferred to the furniture department from the big ticket appliance department. The plaintiffs presented evidence that it was well known to Sears employees that this was what was done to an employee when the company wanted to force them to quit. See Deposition of Arden S. Clegg, III Supp. R. at 10, 12. The trauma of this transfer caused Carlson to feel ill and he needed Phelps' help to get home and had to leave early, Deposition of Ronald L. Carlson, Appendix of Appellee at 413-415. There were no managers on hand to give them permission to leave early. There is also evidence which could support an inference that the decision to fire Phelps and Carlson was made quite soon. There was an indication also that management had sought evidence for Phelps' discharge. See id. at 427. Phelps and Carlson claim that notices advertising job openings in their departments were put out on September 21 and 22, just one and two days after they allegedly violated the new time card policy. See Verified Complaint, I Supp. R. at 24; Deposition of Diane K. Boyd, Appendix of Appellee at 215-217, Exhibits 1 & 2.
 
 
 36
 There is evidence suggesting that employees were never fired for leaving early or being late on occasion, especially when they had good reason. See, e.g., id. at 45 (Clegg states that in twenty years he had never known of anyone being fired for such a thing). Other courts have noted that this is often a badge of pretext. See, e.g., Polk v. Yellow Freight Sys., Inc., 876 F.2d 527, 531 (6th Cir.1989) (and holding that there was enough evidence for the jury to believe that there had been retaliation). Moreover, "[w]here the employer provokes a reaction from an employee, that reaction should not justify a decision to impose a disproportionately severe sanction." Sumner, 899 F.2d at 210 (noting that employees with worse records had received lesser sanctions for worse infractions). Finally, the Sixth Circuit has upheld a lower court finding of retaliatory discharge when the evidence showed a plan by the employer to assign certain work to the employee "to aggravate her ... condition so that [it] could rid itself of her." Knafel v. Pepsi-Cola Bottlers of Akron, Inc., 899 F.2d 1473, 1478 (6th Cir.1990).
 
 
 37
 Phelps and Carlson have presented evidence which, if believed, would support a prima facie case of retaliation. Cf. Bigge v. Albertsons, Inc., 894 F.2d 1497, 1502 (11th Cir.1990). Phelps filed two complaints of sex discrimination, both of which appeared to be justified upon investigation (and the latter of which was investigated immediately before the incident leading to her discharge). That was protected activity. Carlson had supported Phelps in her battle;[6] that too was protected. Management knew about their activities, they were fired, and there is evidence connecting the two as well as casting doubt on Sears' proffered explanation.
 
 
 38
 Each side has presented its story of how the discharges of Phelps and Carlson came about. If Phelps' and Carlson's evidence is to be believed, they have presented genuine issues of material fact on the claim of retaliatory discharge. Since the question is who to believe, this was not a proper matter for summary judgment.
 
 D
 Age Discrimination Claims
 
 39
 Both Phelps and Carlson claim to have been discriminated against on the basis of their age (Phelps was 43 and Carlson was 46 when they were discharged) in violation of 29 U.S.C. 623(a)(1).[7] In fact, their evidence suggests a pattern and practice of age discrimination by Sears. See Deposition of Arden S. Clegg, III Supp. R. at 10-15, 25-30. For example, there is evidence that Sears had a practice of shifting out older sales employees by transferring them to unpopular and less lucrative departments, where they would be less successful and either quit or be fired for poor performance. Moreover, they were replaced by younger part-time employees who cost Sears less to employ because they did not have benefits packages as large as the older employees they replaced and could be hired as salaried rather than commission workers. See id. at 43-43.
 
 
 40
 In order to present a prima facie case of age discrimination under the ADEA, plaintiffs must make a particularized showing that: (1) they were over 40 years of age;[8] (2) they were doing satisfactory work; (3) they were discharged despite the adequacy of their work; and (4) their positions were filled by persons younger than they were. See Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir.1988).
 
 
 41
 In its brief, Brief of Appellee at 24, Sears addresses the Cooper elements of an ADEA prima facie case by challenging the proof of plaintiffs as to only one of the four elements. Sears says that the "undisputed evidence of insubordination" contradicts the showing that Phelps and Carlson were doing satisfactory work; an insubordinate worker cannot be deemed to be doing satisfactory and adequate work.
 
 
 42
 Here, however, we cannot agree that Sears has established that there is no genuine issue of material fact respecting the element of doing satisfactory work. We have addressed the insubordination issue in Part III-C. There the evidentiary matter offered by the parties was reviewed and we pointed out that there was a conflict in the evidence respecting the alleged insubordination. That conflict in the evidence is pertinent here again because Sears has rested its summary judgment motion on the ADEA claim on the basis that insubordination was so clearly established that element (2) (the doing of satisfactory work) was beyond any genuine factual dispute. We cannot agree with Sears' position in light of the conflicting evidence on the genuineness of the insubordination charge against Phelps and Carlson. Again, summary judgment is not warranted in light of the genuine issue of material fact.
 
 
 43
 In sum, we hold that the summary judgment in favor of Sears on the ADEA claim was error.
 
 IV
 Conclusion
 
 44
 Accordingly, the summary judgment for Sears and against plaintiffs Phelps and Carlson on their Title VII and ADEA claims is REVERSED and the cause is REMANDED for further proceedings.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 The Honorable Edward Dumbauld, Senior United States District Judge of the Western District of Pennsylvania, sitting by designation. Judge Dumbauld heard the argument of this appeal but due to his illness he did not participate in this decision
 
 
 [3]
 See also Martin, 3 F.3d at 1418; Honce, 1 F.3d at 1090. "To prevail under a hostile work environment theory, the plaintiff must show that ... conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " Martin, 3 F.3d at 1418 (quoting Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65 (1986)). "Whether the ... conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances." Hicks, 833 F.2d at 1413 (citations omitted). "[O]ne of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere therefore--as well as evidence of specific hostility directed toward the plaintiff--is an important factor in evaluating the claim." Purrington, 996 F.2d at 1029 (emphasis in original) (quoting Hicks at 1415) (1985)
 
 
 [4]
 There is deposition evidence that prior to Phelps' and Carlson's respective terminations the time card policy at Sears' Salt Lake City store had always been relaxed. According to Carlson:
 The time cards in the appliance department were always very lax. An employee could come in a half an hour late, one hour late. There was nothing said about this. An employee could come in, work until 5:00 and leave. There was nothing said about that.
 I have seen employees write "Ill" on their time cards, not get an approval, and still be paid their average for the time that they were off. So the time cards were very loose, very loose.
 Deposition of Ronald L. Carlson, Appendix of Appellee at 416. Moreover, there is also evidence that the time card policy was also not strictly enforced after Phelps' and Carlson's terminations. For example, one employee who checked out approximately ten minutes earlier than she was supposed to "ran right into" management personnel in the parking lot who stated to her, "well, what are you doing, pulling an Arlene on me." That employee was not fired. Deposition of Beverly McCarthy, VI Supp. R. at 51.
 
 
 [5]
 2000e-3(a) states in relevant part that:
 It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 
 
 [6]
 Management knew that Carlson had changed his attitude and supported Phelps. See Deposition of Diane K. Boyd, Appendix of Appellee at 247-248
 
 
 [7]
 29 U.S.C. 623(a)(1) states in relevant part that:
 It shall be unlawful for an employer--
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individuals with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age....
 
 
 [8]
 29 U.S.C. 631(a) limits the protection of the statute to individuals at least 40 years of age