**Rodolfo G. ARZATE, Plaintiff,**

v.

**CITY OF TOPEKA, Topeka Police Department, Undersheriff William Dickerson, Capt. William Beightel,[1] Lt. Kenneth Gorman, and Linda Gainer, Animal Control Manager, Defendants.**

No. 93–4128–SAC.

United States District Court,
D. Kansas.

March 1, 1995.

---

**1.** During the plaintiff's case-in-chief, the plaintiff voluntarily dismissed his claims against Capt. William Beightel in exchange for Capt. Beightel's agreement that he would not seek costs or attorney's fees from the plaintiff or initiate a collateral suit against Arzate for bringing this action.

Amy C. Bixler, Alan G. Warner, Patricia Kelly, Topeka, KS, for plaintiff.

David D. Plinsky, Office of City Atty., City of Topeka, H. Neil Roach, Municipal Court, City of Topeka, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

Trial of this case commenced on February 6, 1995. Based upon the agreement of the parties, several joint exhibits were admitted into evidence at the outset of trial. The plaintiff called each of the human defendants in his case-in-chief. The only other witness called by the plaintiff was the plaintiff himself. At the close of the plaintiff's case-in-chief, the court granted the defendants' motion judgment as a matter of law pursuant to Fed.R.Civ.P. 50 on all of the plaintiff's claims. Specifically, the court found that the

evidence, viewed in the light most favorable to the plaintiff, was insufficient for any rational factfinder to find for the plaintiff on any of his claims.

## Standard for Judgment as a Matter of Law [2] under Fed.R.Civ.P. 50

Fed.R.Civ.P. 50 provides in pertinent part:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

■■■ Judgment as a matter of law is appropriate under Rule 50 "only if the evidence, viewed in the light most favorable to the nonmoving party, points 'but one way and is susceptible to no reasonable inferences supporting' the nonmoving party." *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1149 (10th Cir.1991) (*quoting Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir.1988)), *cert. denied*, 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). Judgment as a matter of law is only proper "when the evidence so strongly supports an issue that reasonable minds could not differ." *Zuchel v. City and County of Denver, Colorado*, 997 F.2d 730, 734 (10th Cir.1993) (*quoting Ryder v. City of Topeka*, 814 F.2d 1412, 1418 (10th Cir.1987) (*quoting Delano v. Kitch*, 663 F.2d 990, 1002 (10th Cir.1981) [*cert. denied*, 456 U.S. 946, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982) ] (citations omitted))); *see Goodwin v.*

*Enserch Corp.*, 949 F.2d 1098, 1101 (10th Cir.1991) (" 'In reviewing the evidence, we must 'view the evidence and all inferences in a light most favorable to the nonmoving party,' although the nonmovant's position 'must be supported by more than a mere scintilla of evidence.' ") (*quoting Meyers v. Ideal Basic Indus., Inc.*, 940 F.2d 1379, 1383 (10th Cir. 1991) [*cert. denied*, 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992) ] ). "A reviewing court 'is not permitted to consider the credibility of witnesses in reaching its decision . . . nor may a court weigh the evidence or determine where the preponderance of the evidence lies.' " *Zuchel*, 997 F.2d at 734 (*quoting Ryder*, 814 F.2d at 1418) (*quoting Martin v. Unit Rig & Equip. Co.*, 715 F.2d 1434, 1438 (10th Cir.1983) (citations omitted)); *see Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 498 (10th Cir.1984) ("In deciding whether to [enter judgment as a matter of law], the trial court must view the evidence most favorably to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. The court may not weigh the evidence or pass upon the witnesses' credibility, or substitute its judgment for that of the jury.") (citation omitted).

## Summary of the Parties' Respective Claims and Defenses as alleged in the Pretrial Order and Trial Briefs

Rodolfo G. Arzate is employed by the City of Topeka as an Animal Control Officer. Arzate has been employed by the City of Topeka for approximately nineteen years. Arzate, a naturalized citizen born in Mexico, is suing the defendants for disparate treatment in violation of federal employment law. Specifically, Arzate contends that he was removed from the position of Senior Animal Control Officer and denied the opportunity to apply for the new position of Animal Control Manager, which encompassed some of Arzate's former duties, on the basis of his race and/or national origin. Arzate contends that

**2.** The terms "directed verdict" and "judgment n.o.v." were replaced in the 1991 amended version of Fed.R.Civ.P. 50 by the phrase "judgment as a matter of law." This change in terminology effected no substantive change. *See Piesco v. Koch*, 12 F.3d 332, 340 (2nd Cir.1993) (citing the 1991 Advisory Committee Note to Amendment of Fed.R.Civ.P. 50).

the Animal Control Manager was given to an unqualified white female, Linda Gainer.

Arzate also alleges that he was subjected to repeated racial discrimination as a result of a hostile work environment. Arzate contends that he was repeatedly subjected to jokes of a racial nature, criticism of his Hispanic accent and mimicking of his speech. Arzate was required by his employer to take English courses to improve his writing and speech skills. Arzate contends that his work is subjected to heightened scrutiny, requiring him to rewrite memos he has prepared for misspellings and poor English, while Caucasian workers are not similarly admonished. Arzate also claims that he is given larger tasks that non-Hispanic employees.

Arzate also claims that the defendants have retaliated against him for bringing this action. Arzate claims that after filing this suit, coworkers were encouraged to write memos and, if possible, complaints about Arzate's work. Fellow employees also encouraged members of the public to file complaints against Arzate. One junior coworker, Tim Johnson, encouraged the animal shelter to write a memo/complaint against Arzate. That complaint was ultimately found to be meritless as Arzate had not committed a breach of policy or procedure. Nevertheless, Arzate claims that he was suspended for five days without pay for insubordination when he was informed of the complaint by Lt. Kenneth Gorman. Arzate is still employed as an Animal Control Officer.

The defendants deny the plaintiff's allegations, arguing that no decision adversely affecting Arzate has been based upon either his race or national origin. Instead, every decision affecting Arzate has been made based upon bona fide, legitimate reasons.

The defendants contend that despite the fact that there was a more qualified applicant, Arzate was originally given the position of Senior Animal Control officer solely based upon his seniority. The defendants contend that Arzate was unable to understand written instructions from his superiors which Arzate was supposed to explain to his workers, so those tasks fell to Linda Gainer or Sergeant Dickerson. Citizens, coworkers and employees in other departments had great difficulty in understanding Arzate's oral and written communications.

In response to public criticism over certain aspects of animal control, Sergeant Dickerson was assigned to Animal Control department to improve the effectiveness in the enforcement of animal control laws. Arzate resisted these changes. In addition, Lt. Gorman believed that Arzate's written reports were inadequate and unprofessional for such a highly paid supervisor. As a consequence of both Sgt. Dickerson's and Lt. Gorman's belief that Arzate's poor communication skills, poor word use and sentence structure needed substantial improvement, Arzate was sent to English classes at Washburn University. Another employee named Mike Grey was also sent to those classes. Arzate was not required to pay for those classes. Despite this additional education, neither Dickerson nor Gorman noticed any significant change in Arzate's communication skills.

Throughout the relevant time frame, Arzate was also experiencing several unfortunate events in his personal life. According to the defendants, the plaintiff's attitude changed significantly and for the worse as he was unfriendly and difficult to deal with.

Based upon certain decisions by the City administration and the City council, more duties were given to Animal Control. A ruling by the municipal court also increased the amount of work for Animal Control. Additional laws were passed, increasing the amount of work expected from Animal Control.

As a result of these and other changes, the City of Topeka decided to create the position of "Animal Control Manager." The creation of this position resulted in the cancellation of the "Senior Animal Control Officer" position. The animal control manager position was given to Linda Gainer, a person more qualified and better suited to the job than Arzate, who was deemed incompetent at the supervisory position he already occupied. Arzate's position was down-classed to Animal Control Officer, but Arzate suffered no pay cut as a result.

The defendants contend that the City of Topeka has a policy against discrimination.

The defendants contend that Arzate's poor communication skills, inability to work well with other employees and failure to properly perform the duties of his job are the basis of all decisions that have been made and not the plaintiff's race or national origin. The defendants deny that they have retaliated against Arzate for filing this lawsuit. Instead, the defendants contend that they have not taken the proper, more drastic disciplinary measures Arzate's work performance deserves due solely to the pendency of this lawsuit.

### The Legal Framework Relevant to Arzate's Title VII Claims [3]

#### Disparate Treatment.

■ In the absence of direct evidence of discrimination, a plaintiff in Title VII actions "must abide by the complicated formula first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973), for proving discrimination by indirect evidence." *Pilditch v. Board of Educ. of City of Chicago*, 3 F.3d 1113, 1116 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1065, 127 L.Ed.2d 385 (1994); *see Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994) (referring to the inferential proof process as the three-step McDonnell Douglas–Burdine "minuet."). The plaintiff in such a case must establish, by a preponderance of the evidence, a "prima facie" case of racial discrimination. *St. Mary's*, — U.S. at —————, 113 S.Ct. at 2746–47, 125 L.Ed.2d at 415.

■ In order to establish a prima facie case of discrimination, the plaintiff must demonstrate that (1) he belonged to the protected group; (2) that he was adversely affected by the defendant's employment decision; (3) that he was qualified for the position at issue; and (4) that he was replaced by a person outside the protected group. *See Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 799 (10th Cir.1993); *Luna*

*v. City & County of Denver*, 948 F.2d 1144, 1147 (10th Cir.1991) (prima facie case where plaintiff claims he was denied promotion).

■ If the plaintiff is successful in establishing a prima facie case, the defendant is presumed to have discriminated against the plaintiff unless the defendant can articulate legitimate, non-discriminatory reasons for the employment decision. *Pilditch*, 3 F.3d at 1116. As the Supreme Court recently explained:

> Under the *McDonnell Douglas* scheme, "establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." [*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).] To establish a "presumption" is to say that a finding of the predicate fact (here, the prima facie case) produces "a required conclusion in the absence of explanation" (here, the finding of unlawful discrimination). 1 D. Louisell & C. Mueller, *Federal Evidence* § 67, p. 536 (1977). Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case—i.e., the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254 [101 S.Ct. at 1089]. "The defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *Id.*, at 254–255, and n. 8 [101 S.Ct. 1094, and n. 8]. It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "the ultimate burden of persuading the trier of fact that the defendant intentional-

---

**3.** During the hearing on the defendants' motions for judgment as a matter of law, the plaintiff made it clear that he was not asserting any Title VII claims against the individual defendants. This clarification of the plaintiff's claims appears to have been appropriate in light of controlling Tenth Circuit precedent. *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993) ("Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate."). For simplicity, however, the court will generally refer to the defendants collectively.

**1500**

ly discriminated against the plaintiff·remains at all times with the plaintiff," *id.*, at 253 [101 S.Ct. at 1093].

*St. Mary's,* —— U.S. at ——, ——, 113 S.Ct. at 2747, 2749, 125 L.Ed.2d at 416.

■ If the defendant fails at this juncture to meet his burden of production, "i.e., has failed to introduce evidence which, *taken as true,* would *permit* conclusion that there was a nondiscriminatory reason" for the employer's actions, the plaintiff is entitled to judgment as a matter of law. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2748, 125 L.Ed.2d at 417–418. "If, on the other hand, the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Id.* at ——, 113 S.Ct. at 2749, 125 L.Ed.2d at 418. "The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *Id.; see Pilditch,* 3 F.3d at 1116.

■ If the defendant has carried his burden of production, in order to prevail the plaintiff must demonstrate that the defendant's proffered explanation is pretextual *and* ultimately that he was the victim of intentional discrimination. *Pilditch,* 3 F.3d at. 1116; *see St. Mary's,* —— U.S. at ——, ——, 113 S.Ct. at 2749, 2752, 125 L.Ed.2d at 418, 421–422 ("[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, and that discrimination was the real reason."); *E.E.O.C. v. Flasher Co. Inc.,* 986 F.2d 1312, 1320 (10th Cir.1992). Therefore, "showing pretext alone is not sufficient for the plaintiff to carry the day, although it may support an inference that the real reason for the employer's action is discriminatory." *Pilditch,* 3 F.3d at 1116 (citing *St. Mary's* —— U.S. at ——, 113 S.Ct. at 2749).

4. The only person who stated that he was qualified for the position of Animal Control Manager was the plaintiff himself. Whether the plaintiff's conclusory statements that he was qualified for the position based upon his extensive experience as Senior Animal Control Officer—in the face of repeated statements by everyone else that the plaintiff did not have the requisite skills for the newly created position—is sufficient evidence to demonstrate that he was qualified is doubtful.

**Analysis**

■ Arzate introduced no direct evidence of race discrimination. Assuming, *arguendo,* that Arzate has established a prima facie case of discrimination,[4] he has failed to present sufficient evidence to demonstrate that the numerous legitimate, non-discriminatory reasons for choosing Gainer for the animal control manager position are pretextual. Arzate did have more seniority in Animal Control and more experience as the Senior Animal Control Officer than Gainer. However, the newly created Animal Control Manager position included several additional duties that were not part of the duties of the Senior Animal Control Officer position. The defendants identified several skills which Gainer possessed that Arzate did not, demonstrating that Gainer was more qualified for the position. *See Durham v. Xerox Corp.,* 18 F.3d 836, 840 (10th Cir.) ("Mere seniority does not support a finding that [the plaintiff] was more qualified for a different job."), *cert. denied,* —— U.S. ——, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994). Moreover, the plaintiff testified during cross-examination that the reason Gainer was chosen instead of him was not because of race discrimination, but because the defendants wanted a female in the position. Viewed in the light most favorable to the plaintiff, the evidence cannot support a finding of race discrimination.

■ As to Arzate's argument that the defendants impermissibly considered his poor communication skills in deciding to give the job to Gainer,[5] the Tenth Circuit has held that "[a] foreign accent that does not interfere with a Title VII claimant's ability to perform duties of the position he has been denied is not a legitimate justification for adverse employment decisions." *Carino v. University of Oklahoma Bd. of Regents,* 750

More importantly, the position of Animal Control Manager required a high school education or its equivalence. Arzate's education was insufficient to satisfy this requirement.

5. Spanish is the plaintiff's first language; English is his second. The plaintiff concedes that he speaks with an accent and admitted that his command of the English language was not good.

F.2d 815, 819 (10th Cir.1984). However, language difficulties that interfere with performance of duties may be legitimately considered in employment decisions. *Id.* (citation omitted). *See also Garcia v. Spun Steak Co.,* 998 F.2d 1480, 1487 (9th Cir.) ("[T]here is nothing Title VII which requires an employer to allow employees to express their cultural identity."), *rehearing en banc denied,* 13 F.3d 296 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2726, 129 L.Ed.2d 849 (1994). The plaintiff's difficulties with communicating effectively in English were self-apparent from the plaintiff's own testimony. During trial, the plaintiff often spoke in broken, incomplete sentences. The plaintiff repeatedly had difficulty understanding the questions of counsel during both direct and cross-examination. The plaintiff's bare assertion that his communication skills were adequate to perform the duties of Animal Control Manager was not supported by the evidence presented in his case-in-chief.

Nor did the plaintiff demonstrate that, based upon his communication skills, he was equally qualified for the position of Animal Control Manager as the person selected for that position. The plaintiff's inability to communicate directives or instructions from upper management to his coworkers or explain Animal Control policies to the public was clearly a legitimate concern of employer. The plaintiff has not presented sufficient evidence to cast any doubt upon the legitimate business reasons articulated by the defendants for their choice of Gainer as Animal Control Manager.

In short, the plaintiff's evidence of intentional discrimination is virtually non-existent. Each of the allegedly "suspicious" circumstances surrounding Gainer's selection were readily explained by the defendants and unrebutted or even accepted by the plaintiff as legitimate managerial decisions. Nor can any of the defendants' conduct of which the plaintiff complained in any way be reasonably viewed as evidence of discrimination based upon race or national origin. In this

same vein, the plaintiff introduced virtually no evidence that any defendant, or for that matter any of the plaintiff's coworkers,[6] used racial epithets or made remarks that could reasonably be interpreted as denigrating the plaintiff's race or national origin. There was evidence that the plaintiff himself made statements which could be viewed as disparaging Mexican–Americans. However, this evidence does not serve as a basis for a Title VII claim of disparate treatment.

In short, the only testimony truly supportive of the plaintiff's disparate treatment claims came from the plaintiff himself. During his direct examination, the plaintiff opined that it was his own belief that his failure to receive the Animal Control Manager position (and other adverse decisions or treatment by his employers) were caused by the defendants' discrimination based upon race or national origin. However, it is well settled that the plaintiff's own "belief" or "feeling" that he was the victim of disparate treatment is insufficient, standing alone, to preclude judgment as a matter of law. *See Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1426 n. 4 (10th Cir.1993) ("A plaintiff's mere belief that defendant's explanation is pretextual or that he was treated unfairly, in and of itself, is insufficient as a matter of law to prove age discrimination."); *Cf. Hanson v. City Oklahoma,* 37 F.3d 1509 (10th Cir.1994) (plaintiff's subjective beliefs as to the defendant's motive insufficient to create a genuine issue of fact of whether race was a motivating factor) (unpublished); *Money v. Great Bend,* 783 F.Supp. 563, 574 (D.Kan.1992) ("[T]he plaintiffs' 'feeling' that they are the victims of racial discrimination fails to demonstrate a material issue of fact in the absence of supporting evidence."). Consequently, the defendants are entitled judgment as a matter of law on the plaintiff's Title VII disparate treatment claims.

### Hostile Work Environment

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice

---

**6.** One coworker asked the plaintiff if he had come to the United States from Mexico by boat. In response to that question, the plaintiff explained that the United States and Mexico are not separated by a large body of water requiring travel by boat. Even the plaintiff interpreted this question by his coworker as primarily evidencing a lack of knowledge about geography rather than as racially a derogatory remark.

for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

As we made clear in *Meritor Savings Bank v. Vinson,* 477 U.S. 57 [106 S.Ct. 2399, 91 L.Ed.2d 49] (1986), this language "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment," which includes requiring people to work in a discriminatorily hostile or abusive environment. *Id.,* at 64 [106 S.Ct. at 2404], *quoting Los Angeles Dept. of Water and Power v. Manhart,* 435 U.S. 702, 707, n. 13 [98 S.Ct. 1370, 1374, n. 13, 55 L.Ed.2d 657] (1978) (some internal quotation marks omitted). When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," 477 U.S., at 65 [106 S.Ct. at 2405], that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id.,* at 67 [106 S.Ct. at 2405] (internal brackets and quotation marks omitted), Title VII is violated.

This standard, which we reaffirm today, takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. As we pointed out in *Meritor,* "mere utterance of an ... epithet which engenders offensive feelings in a employee," *ibid.* (internal quotation marks omitted) does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris v. Forklift Systems, Inc.,* 510 U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295, 301–302 (1993); *see Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1418 (10th Cir.1993); *Honce v. Vigil,* 1 F.3d 1085, 1089 (10th Cir. 1993).

 "To prevail under a hostile work environment theory, the plaintiff must show that ... conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Martin,* 3 F.3d at 1418 (*quoting Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)).

Specifically, it must be shown that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405–06, and (2) the harassment was racial or stemmed from racial animus. General harassment if not racial or sexual is not actionable. The plaintiff must show "'more than a few isolated incidents of racial enmity.'" *Hicks,* 833 F.2d at 1412 [1987] (*quoting Snell v. Suffolk Co.,* 782 F.2d 1094, 1103 (2d Cir.1986)). Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. *Id.* at 1412–13 (*citing Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981)).

*Bolden v. PRC Inc.,* 43 F.3d 545, 550–51 (10th Cir.1994). "Whether the ... conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances." *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir.1987) (citations omitted). "One of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere therefore—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Purrington v. University of Utah,* 996 F.2d 1025, 1029 (10th Cir.1993) (emphasis in original) (*quoting Hicks,* 833 F.2d at 1415).

## Analysis

In support of the his hostile work environment claim, the plaintiff indicated that at times employees in Animal Control "mocked" his speech. Defendant Dickerson admitted that he had spoken in the plaintiff's broken English pattern on occasion. The plaintiff testified that he had not personally witnessed any of the defendants "mock" his speech. Even accepting this as some evidence of a hostile work environment claim, the plaintiff was unable to point to virtually any other evidence remotely demonstrating the existence of a racially hostile work environment.[7] The problem for the plaintiff is that he did not demonstrate the existence of any conduct, including the instances of "mocking," pervaded the working environment so as to create a hostile work environment. *See Bolden.* Nor did the plaintiff demonstrate that the hostile work environment stemmed from racial animus. The plaintiff testified that he does not converse with his coworkers by mutual choice; however, the plaintiff also stated that his coworkers' choice not to talk to him was not due to his race. The fact that coworkers do not like the plaintiff, or that he does not like them, is not the basis of a cognizable Title VII racially hostile environment claim. *Cf., Bolden,* at 551 ("It is clear from the record that [the plaintiff] was unhappy at work; however, general torment and taunting if not racially discriminatory are not actionable."); *Jones v. Jones Bros. Const. Co.,* 716 F.Supp. 1122, 1124 (N.D.Ill.) ("Title VII does not prohibit discrimination on the basis of personality."), *aff'd,* 888 F.2d 1215 (7th Cir.1989). The plaintiff's hostile work environment claim fails as a matter of law.

## Retaliation

Title VII prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation, the plaintiff must prove: "(1) [he] engaged in a protected opposition to discrimination or participation in a proceeding arising out of the discrimination, (2) adverse action by the employer subsequent to the protected activity, and (3) a causal connection between the employee's activity and the adverse action." *Griffith v. State of Colo., Div. of Youth Services,* 17 F.3d 1323, 1331 (10th Cir.1994) (citation omitted); *see Dey v. Colt Const. & Development Co.,* 28 F.3d 1446, 1457 (7th Cir.1994). "The plaintiff need prove only a reasonable good faith belief that there was discrimination". *Henry v. Gehl Corp.,* 867 F.Supp. 960, 967 (D.Kan.1994) (citing *Mitchell v. Visser,* 529 F.Supp. 1034, 1044 (D.Kan. 1981)); *see Dey,* 28 F.3d at 1458 (plaintiff need not succeed on her sexual harassment claim to make out a prima facie case of retaliatory discharge; "Instead, 'it is sufficient if the plaintiff has a reasonable belief that she is challenging conduct [that violates] Title VII.'") (*quoting Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1313 (7th Cir.1989)). An informal complaint to management qualifies as protected activity. *Phelps v. Sears Roebuck and Co.,* 1993 WL 523202 at * 5, 1993 U.S.App. LEXIS 33587 at * 14 (10th Cir.1993); *see Sumner v. United States Postal Service,* 899 F.2d 203, 209 (2nd Cir.1990).

Proof of retaliatory motive need not be through direct evidence of retaliatory animus, but may also be established through evidence that other employees in similar circumstances were treated differently. (citation omitted). From this point on, the analysis follows that in *Burdine* [450 U.S. 248, 101 S.Ct. 1089 (1981)], in that the defendant is permitted to articulate a nondiscriminatory reason for the discharge, and the plaintiff is afforded an opportunity to show that the proffered reason is pretextual. (citation omitted).

*Phelps,* 1993 WL 523202 at * 5, 1993 U.S.App. LEXIS 33587 at 14–15; *see Purrington,* 996 F.2d at 1033.

In the case at bar, Arzate may have presented sufficient evidence for a rational fact-finder to find for him on the first two elements. Whether Arzate demonstrated a causal connection between his activity and

---

7. The plaintiff's own denigration of Mexican–Americans cannot serve as a basis for his hostile work environment claim.

the adverse action is even more doubtful. In any event, the defendants have articulated numerous, legitimate reasons for every instance of "punishment" levied upon the plaintiff since he first raised the issue of discrimination. The plaintiff did not present sufficient evidence to meaningfully challenge the defendants' explanations for any punishment administered as pretextual. *See Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1261 (10th Cir.1994) (plaintiff's unsupported belief that defendants retaliated insufficient to support trial court's finding of retaliation by employer).

The plaintiff complained that certain punishment meted out since the filing of his complaint had been more harsh than punishment levied upon other coworkers for similar transgressions. While at first blush that observation might appear to be accurate as to certain discipline suffered by the plaintiff, it is misleading because the plaintiff did not demonstrate that coworkers violating similar rules but suffering less severe sanctions were similarly situated to him. Based upon the City of Topeka's progressive punishment policy, the plaintiff was subject to increasingly more severe punishment based upon his past violations of the rules governing the terms of his employment. Based upon the evidence presented, the plaintiff was clearly subjected to even-handed punishment for his admitted violations of Animal Control rules.

Moreover, in light of the plaintiff's anemic discrimination claims, the plaintiff did not demonstrate that he had a *reasonable* good faith belief that he was the victim of discrimination. The plaintiff's subjective feeling that the defendants discriminated against him is clearly insufficient to warrant a finding of discrimination. Given the plaintiff's failure to present a meaningful factual basis for his discrimination claims, he did not have a reasonable good faith belief that he has been the victim of discrimination. The defendants are entitled to judgment as a matter of law on the plaintiff's retaliation claims.

### 42 U.S.C. § 1981 [8]

 "Only intentional discrimination may violate section 1981." *Durham*, 18 F.3d at 839. "The allocations of burdens under Title VII applies to proving intentional discrimination under section 1981 as well." *Id.*

### Analysis

The analysis concerning the plaintiff's failure to prove discriminatory intent under his Title VII claims is equally applicable to his § 1981 claims. Because there is insufficient evidence for a reasonable factfinder to conclude that any of the defendants' actions were based upon a discriminatory animus, the defendants are entitled to judgment as a matter of law on the plaintiff's § 1981 claims.

### Summary

In summary, the court grants the defendants' motions for judgment as a matter of law as to all of the plaintiff's claims.

IT IS THEREFORE ORDERED that the clerk of the court shall enter judgment in favor of the defendants.

---

**8.** During the hearing on the defendants' motions for judgment as a matter of law, the plaintiff indicated that he was not asserting any § 1981 claims against the City of Topeka as he viewed them as duplicative of his Title VII claims.