Gregorio J. HERNANDEZ, Plaintiff,

v.

CITY OF OTTAWA, KANSAS, Defendant.

No. Civ.A. 96–2500–GTV.

United States District Court,
D. Kansas.

Jan. 30, 1998.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Plaintiff.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Defendant.

### *MEMORANDUM AND ORDER*

VAN BEBBER, District Judge.

Plaintiff brings this action alleging that defendant denied him employment for two power plant positions on account of his ancestry[1] in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.* The case is before the court on defendant's motion for summary judgment (Doc. 21). For the reasons set forth below, the motion is denied.

---

**1.** Although Title VII does not specifically refer to ancestry, the court assumes that plaintiff is as- serting a claim of discrimination based on his national origin.

## I. Factual Background

Plaintiff Gregorio Hernandez is a United States citizen of Hispanic ancestry residing in Ottawa, Kansas. On September 14, 1994, the Ottawa Utilities Department posted a job announcement seeking a power plant operator. Although the announcement did not specifically so state, the city had two openings to fill. Shortly after reading the announcement in the Ottawa Herald, plaintiff submitted an application through the city's Job Service Center.

The power plant operator job announcement described a wide array of experience and skills required of potential candidates. Specifically, the announcement stated:

*Experience:* One to three years of electric power plant operator experience or equivalent is required. One to three years mechanical and power plant maintenance experience preferred. Employee is expected to have acquired the necessary information and skills to perform the job reasonably well after six months in the position.

\* \* \*

*Skills:* General knowledge of power plant operations, safety procedures, equipment operation and maintenance, mathematics, and chemical usage. The ability to operate generators, cooling towers, pumps and related equipment. Knowledge of construction materials, schematics, welding techniques and electricity. The ability to operate various maintenance equipment. The ability to use personal computers preferred. Reasonable ability to read and understand systems blueprints and equipment schematics.

(Def.'s Mot. for Summ. J., Hasty Depo., Ex. 2). The "position summary" portion of the announcement further noted that power plant operators would learn to perform equipment maintenance and installation procedures while working under the supervision of the plant coordinator. (*Id.*).

Plaintiff's confidential resume that he submitted to the Job Service Center indicates that he holds a Bachelor of Science degree in mechanical engineering from Pittsburg State University.[2] He also has a certificate for completing a four-month electrical engineering class sponsored by the Illuminating Engineering Society of North American Lighting Education. Although he has never been required to perform routine maintenance work as part of his previous employment, plaintiff is familiar with the type of maintenance work required in electrical power plants. During his professional career, he has worked on multiple projects involving, *inter alia*, the design and construction of piping systems for industrial chemical plants and electrical and mechanical energy producing systems. At the time of his application, in fact, plaintiff had been working for Viron Corporation, a company that primarily designs electrical and mechanical energy-producing systems.

After receiving plaintiff's application, Judith Hasty, the city's director of human resources, selected him for an interview along with eight other individuals. Prior to their interviews, all nine candidates took a written test to determine their experience and to insure that they possessed the minimum skills necessary for the job.[3] Plaintiff received a perfect score on the written exam. No other applicant received such a score.

Each candidate then participated in an interview conducted by a panel of four city employees. The panel consisted of Power Plant Coordinator Richard Hollon, Power Plant Superintendent Leslie Wheat, Ottawa Utilities Director James Bradley, and Judith Hasty. This group developed a questionnaire and identified key points to look for in candidates' responses. Although each member of the panel was required to assign a certain point value to all answers, they re-

---

**2.** Defendant later learned that plaintiff's degree is in Technology rather than Mechanical Engineering. This discrepancy had no effect on defendant's decision not to hire plaintiff, however, inasmuch as defendant did not discover the error until after the selection process had been completed. Accordingly, the accuracy of plaintiff's resume is irrelevant here. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 358–

61, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (after-acquired evidence cannot be used to justify a prior discriminatory employment practice).

**3.** Defendant alleges that the test was also designed to assess the applicants' handwriting legibility. Although the matter is not relevant here, the court finds defendant's explanation devoid of credibility.

ceived no guidance or training with respect to how to score various responses. Plaintiff received the highest interview score of all candidates from Mr. Bradley and the lowest interview score from Ms. Hasty. Mr. Hollon and Mr. Wheat both rated plaintiff toward the middle of the pack. (Def.'s Mot. for Summ. J., Hasty Depo., Ex. 7).

After the interviews had been completed, Ms. Hasty combined the interview scores with the written exam results and calculated an overall score for each candidate. The four-member interview panel then discussed the results and recommended the applicant to be hired. Although not part of any formalized policy, the normal practice with similar panels in Ottawa had been to recommend that the top scorer(s) receive the job(s). Mr. Bradley and Ms. Hasty took the panel's recommendation to Ottawa City Manager Scott Lambers, the individual ultimately responsible for making all hiring decisions.

Before making his decision, Mr. Lambers reviewed a summary, prepared by Ms. Hasty, of each interviewed applicant, as well as the panel's recommendations. Mr. Lambers also thoroughly examined the applications of plaintiff, Howard Randall, and David Gragg, the candidate obtaining the highest overall score and the panel's top recommendation. Mr. Lambers offered Mr. Gragg the first power plant operator opening. Mr. Lambers then inquired whether either plaintiff or Mr. Randall was a member of a protected class. After being informed that both belonged to protected classes (but not which classes), he considered the issue moot and selected Mr. Randall, who had received a higher score than plaintiff, for the second opening.

Plaintiff subsequently filed a timely discrimination charge with the Equal Employment Opportunity Commission and the Kansas Human Rights Commission alleging that he had been denied employment on the basis of his ancestry. He then filed this action within ninety days of obtaining his right-to-sue letter from the Commission.

Additional facts will be provided as necessary.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III. Discussion

Plaintiff grounds his discrimination claims on both Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination. Because the standards governing these two statutes are identical, *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368 n. 6 (10th Cir.1997), plaintiff's state and federal claims must meet an identical fate. The court, therefore, will analyze the two claims concurrently.

### A. Title VII Standards

■ Title VII prohibits employers from, *inter alia*, refusing to hire any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). To prevail on a Title VII claim, an individual must establish that his employer had a dis-

criminatory motive or intent. *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1236 (10th Cir.1991). The individual need not prove that the employer's employment actions were motivated solely by an unlawful basis, but he must show that "a discriminatory factor was also a reason for the employer's decision and that it was the factor that made a difference." *Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir.1995) (citation omitted). In other words, plaintiff must establish that he was treated in a manner which, but for defendant's discriminatory motive or intent, would have been different. *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1471 (10th Cir. 1992) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 249, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

Plaintiff offers no direct evidence that defendant discriminated against him on an unlawful basis, but relies instead on circumstantial evidence to prove defendant's discriminatory intent. To insure an efficient presentation of circumstantial evidence, the Tenth Circuit has adopted the burden-shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under the *McDonnell Douglas* framework, plaintiff first must establish a prima facie case of discrimination. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decisions. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). Assuming defendant meets that burden, all presumptions of discrimination drop from the case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to prove by a preponderance of the evidence that defendant's proffered reasons for the challenged actions are merely a pretext for discrimination. *Randle,* 69 F.3d at 451.

### B. Application to Plaintiff's Claim

#### 1. Prima Facie Case

Plaintiff alleges that defendant refused to hire him on account of his national origin. To establish a prima facie case of intentional discrimination under Title VII in this context, plaintiff must demonstrate the following four elements:

(1) he is a member of a protected class;

(2) he applied, and was qualified, for an available position;

(3) defendant rejected him despite those qualifications; and

(4) defendant either: (a) kept the position open and continued to seek applicants from persons of plaintiff's qualifications; or (b) hired a person outside of plaintiff's protected class for the position.

*Randle,* 69 F.3d at 451 n. 13; *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991). Although conceding plaintiff's ability to satisfy the first and fourth prongs of the prima facie test, defendant insists that plaintiff cannot show he was qualified for the power plant operator position. Defendant maintains that plaintiff's lack of experience in maintenance areas and power plant operations rendered him unqualified for the job. Defendant further contends that the individuals it selected for the job openings had considerably more experience than plaintiff.

Defendant's arguments cannot carry the day in a summary judgment context. Indeed, the Tenth Circuit has held that an employer's proffered reasons for taking an adverse employment action against a plaintiff must not be considered in assessing the sufficiency of the plaintiff's prima facie case. *Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1510–11 (10th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 626, 139 L.Ed.2d 607 (1997); *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1470 (10th Cir.1992); *MacDonald v. Eastern Wyo. Mental Health Ctr.,* 941 F.2d 1115, 1119–20 (10th Cir.1991). Thus, in a failure to hire lawsuit, a plaintiff may establish a prima facie case of discrimination merely by advancing credible evidence that he possessed the objective qualifications for the desired position even if the evidence is disputed by the defendant.[4] *See Kenworthy,* 979 F.2d at

---

4. In cases involving hiring or promotion decisions in which the selection criteria are entirely objective in nature, the Tenth Circuit applies a more rigorous standard for satisfying the "qualified" prong of the prima facie test. *See Thomas,* 111 F.3d at 1510 n. 6.

1470. Such evidence may take a variety of forms, including the plaintiff's own testimony regarding his qualifications for the job. *Id.*

The fact that other individuals may be more qualified than plaintiff, although relevant in the pretext analysis, has no bearing on plaintiff's ability to make out a prima facie case of discrimination. To hold otherwise would short-circuit the *McDonnell Douglas* framework at the prima facie stage and deprive plaintiff of the opportunity to demonstrate that defendant's explanation is pretextual and/or that plaintiff's national origin was the determining factor in defendant's refusal to hire him. *See MacDonald*, 941 F.2d at 1119.

Plaintiff has satisfied the "qualified" prong of his prima facie test not only through his own deposition testimony, but also by the fact that he meets all requirements for the power plant operator position identified in defendant's job announcement. Although plaintiff has never been asked to operate a power plant during his career, the job announcement requires only that he have the "equivalent" of three years of power plant operator experience. Moreover, the announcement suggests that applicants will have six months in which to learn many of the requisite skills associated with the position. At a minimum, plaintiff's broad experience in dealing with electrical and mechanical energy-producing systems creates a genuine issue of material fact over his qualifications for the job. Accordingly, the court finds that plaintiff has satisfied the second and third prongs of his prima facie case by articulating competent evidence that he was qualified for the power plant operator job opening and that defendant rejected him despite those qualifications.

### 2. Pretext

Plaintiff concedes that defendant has offered a legitimate and nondiscriminatory explanation for its decision not to hire plaintiff. Specifically, defendant alleges that it opted not to hire plaintiff because he lacked sufficient maintenance experience and had less overall power plant experience than his fellow job applicants. Plaintiff insists, however, that defendant's proffered reasons for its employment actions are a mere pre-

text for a discriminatory intent. To demonstrate pretext, plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997).

Plaintiff identifies several facts suggesting that a discriminatory animus may have motivated defendant's decision to reject plaintiff's job application. First, plaintiff received the highest written examination score among all the candidates for the power plant operator position. This objective test was designed, at least in part, to assess the applicants' experience and to insure that they possessed the minimum skills necessary for the job. Second, Leslie Wheat testified in his deposition that during the entire fourteen years in which he has served as power plant superintendent, defendant has hired only white males to work in the plant. Third, Mr. Wheat commented to plant coordinator Richard Hollon that plaintiff was essentially overqualified for the power plant opening based on his extensive education. Mr. Hollon underscored the accuracy of this comment by noting that few plant workers have gone beyond high school in their studies. These facts create a genuine issue with respect to defendant's true motivation in refusing to hire plaintiff.

Defendant claims that no relevant negative inferences can be drawn from plaintiff's pretext arguments because all hiring decisions were made by Scott Lambers. The court finds this contention unpersuasive. First, plaintiff's pretext theories apply with equal force to Mr. Lambers as they do to any other city employee involved in the selection process. Second, Mr. Lambers based his decision on the recommendation of a four-member panel. Some or all of those four persons could have skewed their interview results on a discriminatory basis, thereby undermining the legitimacy of the entire interview process. Plaintiff has put forward evidence that such a scenario may have occurred here.

Under such circumstances, the court must allow this case to go to a jury.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 21) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**