Gilbert L. GONZALES, Plaintiff,

v.

WESTERN RESOURCES, INC., formerly The Kansas Power & Light Company, Defendant.

No. 97–4087–DES.

United States District Court, D. Kansas.

Feb. 4, 1999.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Gilbert L Gonzales, plaintiff.

David P. Mudrick, Western Resources, Inc., Topeka, KS, K. Gary Sebelius, Michael M. Walker, Wright, Henson, Somers, Sebeli-us, Clark & Baker, LLP, Topeka, KS, for Western Resources, Inc., defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment (Doc. 50) filed pursuant to Fed.R.Civ.P. 56. Both parties have filed briefs on this matter and the court is ready to rule.

### I.  FACTUAL BACKGROUND

The plaintiff filed suit against the defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* claiming he was discriminated against in employment decisions based on his ancestry and that he was subjected to a hostile working environment as a result of his ancestry.[1]  The plaintiff, who is Mexican–American, claims that he was discriminated against by the plaintiff in its refusal to promote the plaintiff to a second year machinist position and its removal of the plaintiff from the machinist program at the defendant's Tecumseh Energy Center.

The plaintiff began working for the defendant in October 1971.  He is currently employed as a Journeyman Mechanic at the Tecumseh Energy Center.  In January 1991, Clyde Booth, one of the two machinists at the Tecumseh Energy Center, announced that he intended to retire in 1992.  The plaintiff expressed interest in the position that was about to be vacated and was given the appointment based on seniority.

When Mr. Booth retired in May 1992, the plaintiff was reclassified from the position of Mechanical Maintenance Man to Machinist 1st Year. On May 16, 1992, approximately two weeks after being classified Machinist 1st Year, the plaintiff requested that he be moved to a Machinist 2nd Year position.

Before the plaintiff was allowed to move to a Machinist 2nd Year position, the defendant required the plaintiff to complete a skills test consisting of what the defendant contends were the skills a Machinist 2nd Year should

---

1. Although Title VII does not refer to ancestry, the court will assume that the plaintiff is asserting a claim of discrimination based on his na-tional origin.  *See Hernandez v. City of Ottawa, Kansas,* 991 F.Supp. 1273, 1274 n. 1 (1998).

possess. The plaintiff was given the first test on June 8, 1992. The tolerance levels for each of the cuts on the test piece were $+/-.005$. The plaintiff failed on all tolerances allowed on the first test piece. On March 23, 1993, the plaintiff was given another machinist test which was identical to the first test. On the second test, the plaintiff failed on three of the tolerances. The plaintiff was given a third test in September 1993, to create a test piece that met the tolerances and specifications used in the two previous tests. On this third test, the plaintiff was asked to correct the tolerances which he had failed to create on the second test. The plaintiff failed one of the three tolerances on this third test. On September 21, 1993, the plaintiff was given a fourth test. The plaintiff failed six tolerances on the fourth test, and was taken out of the machinist program.

On December 14, 1993, the plaintiff was presented with a last chance agreement offering him a "fifth and final chance to pass a demonstration test" for the Machinist 2nd Year position. On April 1, 1994, the plaintiff created a fifth test piece. The test was graded on April 5, 1994, and the plaintiff had again failed to make the part within the required specifications. As a result of failing the fifth test, the plaintiff was removed from the machinist program and returned to the Journeyman Mechanic position. The plaintiff has not attempted to receive any training as a machinist since April 1, 1994.

The plaintiff contends that on several occasions, he was subjected to comments and treatment which amounted to a hostile work environment. On August 30, 1993, an employee named Bill Griffiths made a comment to the plaintiff that manual labor was a Mexican job. On another occasion, an employee named David Collins called the plaintiff and other employees, at least one of whom was Caucasian, a "hoto" which means "queer" in Spanish. The plaintiff also complains of constant derogatory remarks about his work performance and that he is lazy and does not want to work.

These facts are either uncontroverted or are viewed in a light most favorable to the plaintiff. Additional facts will be discussed below, when needed.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which

that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., U.S. v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION OF DISCRIMINATION CLAIM

The plaintiff claims that the defendant's refusal to advance him to the Machinist 2nd Year position and decision to remove him from the machinist program were motivated by his ancestry, in violation of Title VII.

■ Title VII prohibits employers from discriminating against employees in employment decisions on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Although a plaintiff need not show that the employer's sole motive in making its decision was discriminatory in nature in order to prevail on a Title VII claim, he must show that "a discriminatory factor was 'also a reason for the employer's decision' and that it was 'the factor that made a difference.'" *Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir.1995) (quoting *James v. Sears, Roebuck & Co., Inc.,* 21 F.3d 989, 992 (10th Cir.1994)).

The plaintiff has offered no direct evidence that his national origin was a factor in the defendant's decision not to promote the plaintiff to the Machinist 2nd Year position or to remove him from the machinist program. In civil rights cases where no direct evidence of discrimination is shown, the Tenth Circuit has adopted the burden-shifting scheme originally set forth *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze the case.

To survive summary judgment, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Once the plaintiff has established a *prima facie* case, a rebuttable presumption of discriminatory intent arises and the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Flasher,* 986 F.2d at 1316 (citations omitted). However, the employer's reason for the adverse action "must be reasonably specific and clear." *Id.*

If the defendant employer meets this burden, the presumption of discrimination arising from the *prima facie* case "simply drops out of the picture." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). " 'At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.' " *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir.1996) (quoting *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th 1995)). The plaintiff may establish pretext by showing " 'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.' " *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The court must determine whether the evidence, interpreted in the light most favorable to the plaintiff, "could persuade a reasonable jury that the employer had discriminated against

the plaintiff." *Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir.1995) (quoting *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993)). "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Id.* "The plaintiff at all times bears the 'ultimate burden of persuasion.'" *See St. Mary's Honor Center*, 509 U.S. at 511, 113 S.Ct. 2742 (citations omitted).

■ In order to establish a *prima facie* case, the plaintiff must show the following elements:

(1) he belongs to a protected group;

(2) he was adversely effected by the defendant's employment decision;

(3) he was qualified for the position at issue; and

(4) the position sought was filled by a person outside the protected group.

*Arzate v. City of Topeka*, 884 F.Supp. 1494, 1499 (D.Kan.1995). It is uncontroverted that the plaintiff has shown the first, second and fourth elements of the *prima facie* case. By being a Mexican–American, he is within a protected group. In addition, there is no question that the defendant's decision not to advance the plaintiff to the second year position and to remove him from the machinist program adversely affected the plaintiff. The position was filled by a man who was not Mexican–American, and, therefore, was outside of the plaintiff's protected class. However, the defendant contends that the plaintiff cannot show that he was qualified for the position.

The defendant relies on the five failed skills tests to support its claim that the plaintiff was not qualified for the position of Machinist 2nd Year. The plaintiff does not contend that he passed any of these five tests. However, the plaintiff does argue that the test was not designed to demonstrate the skills that would be necessary in the position he sought. In support of this claim, the defendant argues that the test piece he was instructed to create was unlike any pieces that would be used at the Tecumseh Energy Center site. The defendant argues that the test piece required the plaintiff to demonstrate skills and make cuts that are similar to those which are regularly used at the Tecum-

seh Energy Center, even if the piece itself is not typical of pieces that would be used.

The plaintiff claims that the long standing practice at the Tecumseh Energy Center for hiring machinists was that the person with the most seniority who showed interest in the position was given the position upon the completion of a vocational technical school course in machining. The plaintiff met both of these requirements and was given the initial position. The defendant claims that other machinists were required to pass both a written and demonstration test to become machinists.

The plaintiff also claims that he was able to create pieces which were used at the Tecumseh Energy Center on a regular basis. The defendant acknowledges that the plaintiff did create some pieces that were used, but claims that these were simple pieces and did not represent all of the pieces that a second year machinist may be required to make.

As a final argument that he was qualified for the job, the plaintiff points to the fact that some of the parts that the other machinists created had to be retooled because they were not within the required tolerances. Again, the defendant does not contest the fact that some of the parts made by other machinists had to be reworked to the proper tolerances. The defendant claims, however, that the parts made by the plaintiff required much more frequent reworking than those made by the other machinists.

■ The court finds that the plaintiff has raised a sufficient question of material fact as to whether he was qualified for the position in question. A reasonable jury, when viewing the facts in a light most favorable to the plaintiff, could find that he was qualified for the position. Therefore, for the purposes of this motion, the plaintiff has shown the required elements of a *prima facie* case for discrimination.

The burden now shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for its employment actions. The defendant claims that the reason the plaintiff was not advanced to the second year machinist position and was removed from the

machinist program was because the plaintiff failed the demonstration test. The reason offered by the defendant meets its burden under the *McDonnell Douglas* burden-shifting analysis. The plaintiff must now be able to produce some evidence that the reason offered by the defendant is pretext.

██ The plaintiff produces several arguments in his effort to show that the reason offered by the defendant for its employment actions were merely pretext. First, the plaintiff claims that the test he was asked to perform was not related to the work required at the Tecumseh Energy Center. This issue was discussed in the section dealing with whether the plaintiff was qualified for the position. The plaintiff also claims that the people who were hired prior to the plaintiff in the machinist program at Tecumseh Energy Center were not required to pass a skills test. The defendant refutes this claim. Finally, the plaintiff claims that one of the machinists at the Tecumseh Energy Center made statements that the test piece created by the plaintiff was close enough to qualify him for the second year machinist position and that the piece created by the man who replaced the plaintiff in the program was not much better than that of the plaintiff.[2]

The plaintiff has produced sufficient evidence, for the purposes of this motion, to support the claims he makes in regard to pretext. The court finds that if these allegations are viewed as truthful by a jury, a reasonable jury could find that the offered reason for the employment actions of the defendant were pretext, and that discrimination was a motivating factor in the decisions.

Based on the findings on this matter, the court finds that the defendant's motion for summary judgment should be denied as it relates to the plaintiff's Title VII claim of discrimination based on national origin.

## IV. DISCUSSION OF HOSTILE WORK ENVIRONMENT CLAIM

██ The plaintiff's second claim is that he has been subjected to a hostile work environment based on his ancestry. As with the claim of discrimination, the court assumes the plaintiff means that his national origin is the basis for the hostile working environment. In order to survive summary judgment, the plaintiff must provide evidence which shows that, under the totality of the circumstances, (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus. *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir.1998). To determine whether the harassment was sufficiently severe or pervasive, the court must consider all the circumstances, including such things as the "frequency of the discriminating conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998).

██ The facts provided by the plaintiff in support of his hostile work environment claim include:

(1) A statement by Mr. Griffiths made to the plaintiff that "manual labor was a Mexican;"

(2) on Company Diversity Day a non-Hispanic employee of the defendant made a derogatory remark in Spanish to the plaintiff;

(3) other racially derogatory comments or ethnic slurs by Mr. Griffiths;

(4) constant comments by the others that the plaintiff is slow or lazy and cannot do his work; and

(5) an individual named David Collins called the plaintiff a "hoto" which means "queer" in Spanish.

The plaintiff has provided no other examples of conduct which contribute to his hostile work environment claim. The comments that the plaintiff is slow or lazy and cannot

---

**2.** The defendant objects to the use of these statements in support of the plaintiff's claim. The defendant claims that the statements are hearsay that would be inadmissible at trial, and therefore, cannot be used in support of the plaintiff's claims in regard to this motion. The court finds that the statements may be admissible at trial either as non-hearsay or as exceptions to the hearsay rules. Therefore, the court will consider the statements at this time.

do his work will not be considered by this court as evidence of a national origin based hostile work environment. Characteristics that are possessed by some persons of all national origins are not evidence of a hostile work environment based on national origin. Only those actions which are based on the plaintiff's national origin can be used to support this claim. "[G]eneral torment and taunting if not racially discriminatory [is] not actionable." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.1994). There is no evidence that the comments concerning the plaintiff being slow or lazy and not able to do his work were, in any way, connected to his national origin.

■ The court finds that the remaining actions complained of by the plaintiff are insufficient to show that the harassment was "pervasive or severe enough to alter the terms, conditions, or privilege of employment." The comment made by Mr. Griffiths concerning manual work being a Mexican job was dealt with by the defendant by requiring Mr. Griffiths to apologize to the plaintiff. The "hoto" comment was made to numerous individuals, including some who were not Mexican–American. The plaintiff cannot simply rely on these few isolated incidents and a general, unsupported allegation of a constant barrage of racial comments and ethnic slurs by Mr. Griffiths to support his hostile work environment claim. There is simply not sufficient evidence before the court for the plaintiff to meet his burden. Therefore, the court finds that summary judgment is proper on the plaintiff's claim of hostile work environment based on national origin.

**IT IS THEREFORE BY THIS COURT ORDERED** that the defendant's Motion for Summary Judgment (Doc. 50) is granted in part and denied in part. The motion is granted as it applies to the plaintiff's hostile work environment claim. The motion is denied as it applies to the plaintiff's remaining claim of discrimination under Title VII of the Civil Rights Act of 1964.